**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN BELTRAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VF OUTDOOR, LLC., a Delaware Limited Liability Company; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 4:26-cv-02245-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)**<br><br>Hearing Date: October 1, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2 – 4th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................ 1

A. Statement of Issues to Be Decided ........................................................ 2

B. Succinct Statement of Relevant Facts ........................................................ 2

II. LEGAL STANDARD ........................................................ 3

III. ARGUMENT ........................................................ 3

A. Defendant is Subject to Specific Personal Jurisdiction ........................................................ 3

B. Plaintiff States a Claim Under California Penal Code § 631(a) ........................................................ 5

1. The Complaint alleges Plaintiff's communications, the Trackers that operated during his visit, and intercepted contents. ........................................................ 5

2. Defendant's party status does not confer party status on independent tracker operators or extinguish fourth-clause liability. ........................................................ 6

3. Purposeful deployment of the Trackers plausibly alleges willfulness; the Privacy Policy does not establish consent. ........................................................ 7

4. The Complaint plausibly alleges contemporaneous acquisition and processing of communications in transit. ........................................................ 8

C. Plaintiff States a Claim Under California Penal Code § 638.51(a) ........................................................ 9

1. Plaintiff alleges qualifying processes, installation and use, and collection of non-content addressing information. ........................................................ 9

2. The statute is not categorically confined to legacy telephone technology, and the CCPA supplies no implied exemption. ........................................................ 10

3. Section 638.51 contains no categorical party-to-the-communication exemption. ........................................................ 11

D. Plaintiff States a Claim Under the Federal Wiretap Act ........................................................ 11

E. Plaintiff States a Claim Under California Penal Code § 502 ........................................................ 13

1. The Complaint alleges statutory access, taking, copying, use, and browser-side computer activity. ........................................................ 13

2. The Complaint plausibly alleges economic appropriation; any need for greater Plaintiff-specific loss allegations warrants amendment. ........................................................ 13

3. Defendant's control of the Website and alleged pre-consent deployment plausibly establish knowledge and lack of permission. ........................................................ 14

F. The Rule of Lenity Provides No Independent Basis for Dismissal ........................................................ 15

G. Plaintiff States a Claim Under Article I, Section 1 of the California Constitution ........ 15

1. Plaintiff plausibly alleges a reasonable expectation of privacy in undisclosed third-party duplication, aggregation, and reuse. ........ 15

2. The alleged method, persistence, third-party dissemination, and profiling plausibly cross the social-norm threshold. ........ 16

H. Plaintiff States a UCL Claim ........ 17

1. Any surviving statutory predicate preserves the unlawful prong, and Plaintiff independently pleads unfair conduct. ........ 17

2. The Complaint alleges economic appropriation of Plaintiff's data; if the Court requires more under Moore, amendment is the proper remedy. ........ 17

3. *Sonner* concerns equitable remedies, not UCL statutory standing, and damages do not necessarily redress threatened future tracking. ........ 18

I. Any Curable Deficiency Warrants Leave to Amend ........ 18

IV. CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Cases**

*Allison v. PHH Mortgage*, No. 25-cv-05323-RFL, Dkt. 50, at 18–19 (N.D. Cal. May 14, 2026).. 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) .......... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) .......... 3

*Briskin v. Shopify Inc.*, No. 21-cv-06269-PJH, Dkt. 112, at 7–9 (N.D. Cal. July 30, 2026).......... 9

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 752–60 (9th Cir. 2025) (en banc) .......... 1, 4

*Brown v. Google LLC*, 685 F. Supp. 3d 909, 938–41 (N.D. Cal. 2023) .......... 13

*Calhoun v. Google LLC*, 113 F.4th 1141, 1148–52 (9th Cir. 2024) .......... 8, 13, 14, 16

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) .......... 17

*Cody v. E. Gluck Corp.*, No. 23-cv-02286-HSG, 2024 WL 4314187, at *2 (N.D. Cal. Sept. 26, 2024).......... 6

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419–20 (9th Cir. 1997) .......... 4

*DellaSalla v. Samba TV, Inc.*, No. 25-cv-03470-JSC, Dkt. 68, at 13–14 (N.D. Cal. Apr. 21, 2026) .......... 14

*Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025).......... 9

*Dyna-Med, Inc. v. Fair Employment & Housing Commission*, 43 Cal. 3d 1379, 1387 (1987) .......... 11

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) .......... 19

*Foman v. Davis*, 371 U.S. 178, 182 (1962).......... 18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–65 (2021) .......... 3, 5

*Fregosa v. Mashable Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *2–7 (N.D. Cal. Oct. 9, 2025).......... 10

*Fregosa v. Mashable Inc.*, No. 25-cv-01094-CRB, Dkt. 82 (N.D. Cal. Feb. 19, 2026) .......... 11

*Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, Dkt. 77, at 12–16 (N.D. Cal. July 2, 2026).......... 7

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) .......... 10

*Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1311–14 (9th Cir. 2022).......... 18

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–88 (2009).......... 15

*Hill v. National Collegiate Athletic Association*, 7 Cal. 4th 1, 35–37 (1994).......... 15

*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 605 (9th Cir. 2020) ............. 6, 16

*In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1022–24 (N.D. Cal. 2024) ................... 17

*In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106, 1108–09 (9th Cir. 2014) ............................ 6

*J.S. v. Spring Fertility Holdings, LLC*, No. 24-cv-07374, 2026 WL 1483490, at *5–6 (N.D. Cal. May 27, 2026) ........................................................................................................ 8

*Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013) ........................................................... 15

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 116–18 (2006)...................................... 11

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018) ............ 2, 3, 13, 16

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)............................................ 8

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–25 (2011)................................................ 17

*Laub v. U.S. Department of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) .................................... 5

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) .................................................. 19

*Manier v. Triple Lift Inc.*, No. 2:25-cv-03223, 2026 WL 1295546, at *6–7 (C.D. Cal. Apr. 15, 2026)...................................................................................................................... 14

*Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 WL 1718225, at *1–2 (9th Cir. June 20, 2025) (mem.)...................................................................................................... 7

*Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015)......................................................... 3

*Moore v. Centrelake Medical Group, Inc.*, 83 Cal. App. 5th 515, 537–39 (2022) ....................... 17

*Popa v. Microsoft Corp.*, 153 F.4th 784, 790–92 (9th Cir. 2025).................................................. 16

*Ramos v. Gap, Inc.*, No. 23-cv-04715-HSG, 2024 WL 4351868, at *3–4 (N.D. Cal. Sept. 30, 2024)........................................................................................................................ 6

*Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985)............................................................................... 6

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090–92 (N.D. Cal. 2025)....... 12, 16

*Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *3–4 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024) ..................................................................................................... 10

*Rose v. Bank of America, N.A.*, 57 Cal. 4th 390, 396–98 (2013) ................................................ 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401–02 (9th Cir. 1986)........ 19

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ......................... 3, 5

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202–03 (2021) .............................................................. 15

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841–44 (9th Cir. 2020)................................... 18

*Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011)........................................................ 3

*Thomas v. Papa John's International, Inc.*, Nos. 24-3557, 24-3834, 2025 WL 1704437, at *1–2 (9th Cir. June 18, 2025) (mem.) ....................................................................... 4, 7

*Torres v. Prudential Financial, Inc.*, No. 22-cv-07465, 2025 WL 1135088, at *3–4 (N.D. Cal. Apr. 17, 2025) ................................................................................................ 8

*Torres v. SeatGeek, Inc.*, No. 25-cv-07118-LB, Dkt. 44, at 12–13 (N.D. Cal. May 28, 2026) ...... 10

*Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611, 2026 WL 1433958, at *5–7 (N.D. Cal. May 21, 2026)............................................................................................................ 14

*United States v. Christensen*, 828 F.3d 763, 788–89 (9th Cir. 2015) ........................................... 13

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) ................................................ 15

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 761–63 (N.D. Cal. 2023) ......... 8

*Walden v. Fiore*, 571 U.S. 277 (2014) ...................................................................................... 4

*White v. Davis*, 13 Cal. 3d 757, 774–76 (1975) ....................................................................... 15

*Zhang v. Superior Court*, 57 Cal. 4th 364, 370–71 (2013) ......................................................... 17

**Statutes**

18 U.S.C. § 2511(1)(a), (c)–(d) ............................................................................................ 11

18 U.S.C. § 2511(2)(d)............................................................................................................. 12

Cal. Penal Code § 502(c)(2) ....................................................................................................... 2

Cal. Penal Code § 631(a).............................................................................................................. 1

Cal. Penal Code § 638.50(b) ........................................................................................................ 9

Cal. Penal Code § 638.51(a).......................................................................................................... 2

## I. INTRODUCTION

Defendant's Motion depends on a premise Rule 12 does not permit: that the Court should replace the Complaint's allegations about what Defendant's tracking code did with Defendant's preferred account of what that code supposedly did. The Complaint alleges a concrete event. While Beltran was in California shopping on The North Face website, Defendant's programmed code caused alleged third-party tracking processes to operate in his browser, collect identifying and behavioral information - including his IP address and Website activity - and transmit information to outside advertising and analytics companies for profiling and targeted advertising. Compl. ¶¶ 2, 43–75, 89, 95–100. Defendant recasts that alleged architecture as nothing more than an ordinary request for a public webpage. At the pleading stage, it cannot litigate the architecture out of the Complaint.

The same error drives the jurisdictional challenge. Defendant argues that a national website cannot be purposefully directed at California without differential state-specific targeting and asserts without a declaration or other evidence - that it "has no idea" where visitors are located. Mot. at 6–8. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 752–60 (9th Cir. 2025) (en banc), rejected the differential-targeting rule. *Briskin* involved the stronger developed fact that Shopify conceded its geolocation technology identified the California device. But here, at the prima-facie stage, the Complaint alleges a California session, collection of IP information capable of supplying location, and location-based targeting; Defendant's own Policy acknowledges that city or ZIP code may be inferred from IP addresses. Compl. ¶¶ 6, 28–36, 57, 61, 89, 95–99; RJN Ex. 1 at 3–5. Counsel's unsupported assertion cannot overcome those allegations or foreclose narrowly tailored jurisdictional discovery.

The merits arguments likewise depend on resolving pleaded facts against Beltran. The Complaint does not allege only that trackers could collect information. It alleges that Defendant caused alleged Trackers to operate during Beltran's February 2026 visit, that he searched for products, that his Website activity and identifying information were collected and shared, and that he thereafter received advertising and communications related to those searches. Compl. ¶¶ 95–100. It expressly pleads fourth-clause liability under Cal. Penal Code § 631(a), browser-side acquisition during transmission, processes collecting non-content routing and addressing information under Cal. Penal Code § 638.51(a), unauthorized computer access and use under Cal. Penal Code § 502(c)(2),

and undisclosed third-party duplication, aggregation, and commercial reuse supporting the privacy and UCL claims. The Motion repeatedly substitutes Defendant's technical and consent narratives for those allegations.

The Privacy Policy does not cure those defects. The Court may notice what the Policy says, but it may not use judicial notice to establish that Beltran saw it, assented before the alleged Trackers activated, authorized every challenged third-party transmission, or experienced a system that operated as the Policy describes. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018). The Policy itself describes collection of IP addresses, browsing and search activity, products considered, location inferred from IP addresses, disclosures to advertising vendors, cross-site targeted advertising, and practices that may constitute "selling" or "sharing." RJN Ex. 1 at 3–6. Those statements do not establish consent or location blindness as adjudicative facts.

### A. Statement of Issues to Be Decided

The issues are whether: (1) the alleged California browser interaction supplies specific jurisdiction or, alternatively, warrants jurisdictional discovery; (2) the Complaint plausibly alleges § 631(a) fourth-clause liability, contents, scienter, lack of consent, and contemporaneous acquisition; (3) the alleged browser processes and metadata fall within § 638.51(a); (4) the federal Wiretap Act claim survives Defendant's one-party-consent defense and the crime-tort proviso; (5) the Complaint states a claim under § 502(c)(2) and adequately pleads, or may amend to plead, § 502(e)(1) loss; (6) lenity compels dismissal; and (7) the constitutional privacy and UCL claims are adequately pleaded.

### B. Succinct Statement of Relevant Facts

Beltran alleges that, while in California in approximately February 2026, he visited thenorthface.com to shop and browse for clothing and searched for products. Compl. ¶¶ 6, 95, 99. The Complaint describes site-wide forensic testing identifying numerous third-party cookies, pixels, fingerprinting scripts, session-recording tools, and advertising-network technologies, and separately alleges that at least several alleged Trackers operated during Beltran's session, collected his Website activity and identifying information, and transmitted information to third-party operators for their own advertising and analytics purposes. Id. ¶¶ 43–75, 89–100. Defendant allegedly programmed

activation immediately upon landing, before any prior consent or opt-out mechanism. Id. ¶¶ 74–75, 100. Beltran alleges that he then received targeted advertisements and communications related to products he had searched. Id. ¶ 99.

## II. LEGAL STANDARD

On a Rule 12(b)(2) motion decided without an evidentiary hearing, Plaintiff need make only a prima facie showing of personal jurisdiction. Uncontroverted allegations are accepted as true, and factual conflicts are resolved in Plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Once Plaintiff establishes purposeful direction and relatedness, Defendant must make a compelling showing that jurisdiction is unreasonable. *Id.* at 802; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–65 (2021).

Under Rule 12(b)(6), the Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). Plausibility does not require probability, and the Court may not select Defendant's competing explanation merely because it considers it more likely. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011). A noticed or incorporated document cannot be used to resolve genuinely disputed facts or displace contrary allegations. *Khoja*, 899 F.3d at 998–1003.

## III. ARGUMENT

### A. Defendant is Subject to Specific Personal Jurisdiction

Defendant does not dispute that Beltran was physically in California when the challenged Website interaction occurred. Compl. ¶ 6. It instead portrays the case as resting on bare national accessibility of thenorthface.com. Mot. at 6–8. That is not the Complaint. Beltran alleges an interactive commercial Website programmed to deploy outside tracking processes; operation of alleged Trackers in his California browser; collection of Website activity and identifying information, including IP information; transmission to advertising and analytics entities; and use for targeted advertising based on location. Compl. ¶¶ 1–2, 6, 43–75, 89, 94–100. The alleged forum contact is the conduct giving rise to the claims.

*Briskin* forecloses Defendant's categorical rule. Sitting en banc, the Ninth Circuit held that an internet business need not single out California for different treatment before deliberate electronic conduct can be expressly aimed here. 135 F.4th at 752–58. The inquiry is whether the forum contact resulted from the defendant's deliberate choice rather than something "random, isolated, or fortuitous." *Id.* at 757–58. Thus, deliberate installation of software on a California device and extraction of personal information were defendant-created California contacts even though Shopify operated nationwide. *Id.* at 752–60.

Defendant correctly notes that *Briskin* included a concession that Shopify's geolocation technology allowed it to know the device was in California. *Id.* at 750–51, 756. That factual difference does not establish lack of jurisdiction here as a matter of law. Defendant offered no declaration, server records, source code, or technical evidence supporting its assertion that it "has no idea where any of its website visitors are from." Mot. at 7. The Complaint alleges Plaintiff's California location, collection of IP addresses, the geographic functionality of IP information, and targeted advertising based on locations. Compl. ¶¶ 6, 28–36, 57, 61, 89, 95–99. The Policy confirms that Defendant may infer city or ZIP code from an IP address and use tracker-derived information for targeted advertising. RJN Ex. 1 at 3–5. Although the Policy does not prove how Beltran's session operated, it reinforces why location ignorance cannot be assumed against the pleading.

Beltran also alleges more than a static page fortuitously viewed from California. Defendant allegedly caused executable tracking processes to operate in a California browser and obtain information generated during an active commercial session. Compl. ¶¶ 6, 69–75, 95–100. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419–20 (9th Cir. 1997), involved an essentially passive webpage and materially different contacts. Nor does *Walden v. Fiore*, 571 U.S. 277 (2014), control: Plaintiff does not rely only on residence or forum injury; the alleged data collection occurred through code interacting with a device located here. *Briskin*, 135 F.4th at 752–55. The Ninth Circuit's unpublished memorandum in *Thomas v. Papa John's International, Inc.*, Nos. 24-3557, 24-3834, 2025 WL 1704437, at *1–2 (9th Cir. June 18, 2025) (mem.), persuasively applied *Briskin* to a national commercial website alleged to collect information invading California users' privacy.

Relatedness is direct. *Ford* rejects a strict but-for requirement and recognizes jurisdiction where the forum contacts sufficiently "relate to" the claims. 592 U.S. at 362–65. Here, the alleged contact and injury occurred in the same transaction: Beltran used Defendant's commercial Website in California, and Website code allegedly caused the challenged collection and transmission during that visit. Compl. ¶¶ 6, 69–75, 95–100. Defendant identifies no exceptional burden or sovereignty concern making jurisdiction unreasonable. *Schwarzenegger*, 374 F.3d at 802.

At minimum, if the Court requires further evidence of location knowledge or tracker configuration, narrowly tailored jurisdictional discovery is warranted. *Laub v. U.S. Department of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Discovery may be confined to IP-derived geographic information from the relevant session, tracker data fields and configurations, geographic targeting signals, California Website activity, and related records within Defendant's or its vendors' possession. Dismissal based on counsel's unsupported factual assertion is not the proper alternative.

### B. Plaintiff States a Claim Under California Penal Code § 631(a)

#### 1. The Complaint alleges Plaintiff's communications, the Trackers that operated during his visit, and intercepted contents.

Defendant narrows a claim the Complaint does not plead so narrowly. Although the Motion principally attacks direct second-clause liability, Mot. at 8 & n.3, the Complaint expressly alleges "Aided and Abetted Third-Party Interception"; Defendant's embedding and installation of outside Trackers; real-time transmission of user communications to tracker operators; the operators' independent commercial use; and fourth-clause liability for one who aids, agrees with, employs, or conspires with another to commit the prohibited acts. Compl. ¶¶ 67–76, 113, 117–18.

Beltran also supplies the Plaintiff-specific link missing from Defendant's cases. He alleges that he visited the Website in California in approximately February 2026 to shop and browse for clothing, searched for products, encountered alleged Trackers caused to operate by VF-programmed code, had Website activity and identifying information collected and shared, and then received advertisements and communications related to the products searched. Compl. ¶¶ 95–100. The site-wide forensic allegations identify the types of technologies Defendant deployed; they are not alleged

as proof that all 151 identified site-wide trackers executed during Beltran's session. The Plaintiff-specific allegations are that at least several alleged Trackers operated and collected his information. Id. ¶¶ 96–99.

That distinction defeats Defendant's reliance on *Cody v. E. Gluck Corp.*, No. 23-cv-02286-HSG, 2024 WL 4314187, at *2 (N.D. Cal. Sept. 26, 2024), and *Ramos v. Gap, Inc.*, No. 23-cv-04715-HSG, 2024 WL 4351868, at *3–4 (N.D. Cal. Sept. 30, 2024). Those complaints lacked the necessary connection between the plaintiff's own conduct and the capturing feature. Beltran alleges a tracker-instrumented visit, shopping and product searches, collection of his Website activity, and resulting product-related targeting. Compl. ¶¶ 95–100.

The alleged communications plausibly contain "contents." The Ninth Circuit distinguishes automatically generated addressing information from information communicating substance or meaning. *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106, 1108–09 (9th Cir. 2014). Search terms and sufficiently descriptive URLs may reveal the subject of a user's communication, interests, or queries. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 605 (9th Cir. 2020). Beltran alleges product searches, page and content interactions, and related Website activity - not merely an IP address. Compl. ¶¶ 12–13, 43–62, 95–99.

**2. Defendant's party status does not confer party status on independent tracker operators or extinguish fourth-clause liability.**

Party status is actor-specific. A website operator may be an intended recipient of communications directed to it, but that does not make undisclosed outsiders simultaneous parties. *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985), distinguishes a participant's later repetition from an undisclosed third person's contemporaneous listening. *Facebook Tracking* applies that principle online: embedded code did not make Facebook a party merely because it caused the browser to transmit Facebook a simultaneous copy of communications directed elsewhere. 956 F.3d at 607–08.

The Complaint alleges that Meta, Google, and other tracker operators did more than perform invisible clerical functions for Defendant. They allegedly correlated Website activity with broader

information, constructed behavioral profiles, engaged in cross-site targeting, and used information for their own commercial purposes. Compl. ¶¶ 51–62, 68–73. Whether any particular vendor ultimately proves to be only Defendant's technological extension is a tracker-specific factual question, not transaction-wide immunity on the pleadings.

The Ninth Circuit's unpublished memorandum in *Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 WL 1718225, at *1–2 (9th Cir. June 20, 2025) (mem.), is directly persuasive. It held that allegations that a website aided or employed session-replay providers to acquire communication contents in real time, without consent, stated fourth-clause liability. *Thomas*, by contrast, affirmed dismissal because the plaintiff pleaded only direct interception by the website operator, not aiding liability for another entity's interception. 2025 WL 1704437, at *2. Beltran pleaded the theory absent there. Compl. ¶¶ 67–76, 113, 117–18.

Plaintiff also recognizes that the fourth clause requires more than accidental assistance. *Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, Dkt. 77, at 12–16 (N.D. Cal. July 2, 2026), required facts supporting knowledge of the conduct constituting the violation and a purpose to aid or employ the third party to perform it. *Gliksman* involved additional notice facts, including prior litigation and a government settlement, but did not make those particular facts a pleading minimum. Here, Defendant allegedly selected and embedded the outside scripts, programmed them to activate automatically before consent, caused contemporaneous transmissions to the operators, obtained analytics and advertising benefits, and knew the operators used the information for their own profiling and targeting. Compl. ¶¶ 43–75, 95–100. Those allegations support a reasonable inference of a knowing and purposeful arrangement rather than inadvertent technical assistance

**3. Purposeful deployment of the Trackers plausibly alleges willfulness; the Privacy Policy does not establish consent.**

The Complaint alleges intentional conduct: Defendant selected and embedded outside scripts, deployed advertising and session-recording technologies, caused them to activate automatically, and used resulting information for analytics and advertising. Compl. ¶¶ 43–75, 95–100. It further alleges that the third-party operators used the collected information to deliver

advertisements related to products Beltran searched. Id. ¶¶ 73, 99. At the pleading stage, product-specific targeting supports the inference that the operators read or processed the substance of the Website communications, rather than merely receiving unidentified technical signals. *Gliksman*, Dkt. 77, at 14–15.

The Policy does not negate willfulness or establish prior consent. The Complaint alleges immediate deployment before a visitor had a mechanism to consent or opt out, and that Beltran did not consent beforehand. Compl. ¶¶ 74–75, 100. Consent turns on what operative disclosures reasonably communicated and the scope of assent actually given. *Calhoun v. Google LLC*, 113 F.4th 1141, 1148–52 (9th Cir. 2024). *Khoja* forbids converting notice of a policy into adjudicative findings about whether Beltran saw it before collection, agreed to it, or authorized every challenged third-party practice. 899 F.3d at 998–1003.

**4. The Complaint plausibly alleges contemporaneous acquisition and processing of communications in transit.**

An electronic interception must occur contemporaneously with transmission, rather than solely through later access to stored material. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The Complaint alleges more than the label “real time.” It describes browser-executed JavaScript pixel events that detect user actions and send them to outside servers as they occur; immediate tracker activation upon landing; automatic transmission of page views, product views, searches, and interactions; and session-recording processes operating during the browsing session. Compl. ¶¶ 12–13, 38, 43–48, 55–62, 70–75. Those allegations describe browser-side acquisition during an ongoing transmission, not later retrieval from a completed database.

Defendant’s pleading-stage authorities do not establish that every browser-side allegation is conclusory. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 761–63 (N.D. Cal. 2023), *Torres v. Prudential Financial, Inc.*, No. 22-cv-07465, 2025 WL 1135088, at *3–4 (N.D. Cal. Apr. 17, 2025), and *J.S. v. Spring Fertility Holdings, LLC*, No. 24-cv-07374, 2026 WL 1483490, at *5–6 (N.D. Cal. May 27, 2026), rejected allegations that did not identify a plausible pre-storage acquisition sequence. Here, the alleged sequence is browser event, execution of

embedded code, and transmission to an outside server as the communication occurs. Whether discovery ultimately confirms that sequence is not resolved by Defendant's competing technical assertion.

The favorable authorities are persuasive, not factually interchangeable. *Facebook Tracking* recognizes that browser code causing simultaneous duplication may constitute interception. 956 F.3d at 607–08. *Mikulsky* found real-time session-replay acquisition adequately alleged. 2025 WL 1718225, at *1–2. The post-remand order in *Briskin v. Shopify Inc.*, No. 21-cv-06269-PJH, Dkt. 112, at 7–9 (N.D. Cal. July 30, 2026), involved a more granular amended sequence but confirms that alleged pre-storage stream processing presents a pleading question, while *Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025), resolved a developed summary-judgment record. The Complaint plausibly alleges contemporaneity; any demand for still greater technical granularity warrants amendment, not dismissal with prejudice.

### C. Plaintiff States a Claim Under California Penal Code § 638.51(a)

#### 1. Plaintiff alleges qualifying processes, installation and use, and collection of non-content addressing information.

Section 638.50(b) defines a pen register functionally as a "device or process" that records or Section 638.50 defines a pen register functionally as a "device or process" recording or decoding dialing, routing, addressing, or signaling information associated with a wire or electronic communication, excluding contents. Cal. Penal Code § 638.50(b). It separately defines a trap-and-trace device or process as one capturing incoming impulses identifying the source or other routing, addressing, or signaling information. Id. § 638.50(c). Section 638.51(a) prohibits installation or use of either process absent statutory authorization. The operative text is functional; it is not limited to a physical telephone instrument.

The Complaint alleges site-wide forensic detection of third-party cookies, pixels, fingerprinting scripts, session recorders, and advertising-network processes; explains their browser-side execution; and alleges collection of IP addresses, identifiers, URLs, domains, device information, and other non-content metadata. Compl. ¶¶ 43–65, 86–92. It separately alleges that at least several alleged Trackers operated during Beltran's February 2026 session and collected his

identifying information, including his IP address, without prior consent or a court order. Id. ¶¶ 95–101, 119–24. That is a claim against added tracking and advertising processes, not the ordinary first-party exchange needed to return a webpage.

Defendant's directionality argument does not compel dismissal. Mot. at 12 n.5. *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *3–4 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024), is a nonbinding trial-court decision and addressed the label attached to an IP address in a different architecture. Here, the alleged tracking requests involve routing and addressing information transmitted from the browser to outside tracker servers, including URLs, domains, identifiers, and request metadata; the user's IP address also identifies the source of those communications. Compl. ¶¶ 57, 61, 86–92. To the extent the source-facing information is more precisely characterized as trap-and-trace information, § 638.51(a) prohibits that process in the same sentence, and the Complaint quotes and invokes the prohibition on both pen registers and trap-and-trace devices. Id. ¶ 119. Rule 8 turns on the pleaded facts and statutory violation, not an imperfect label for the process's direction.

Federal decisions have therefore treated software as a statutory "process" and IP addresses or similar metadata as routing or addressing information. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *Fregosa v. Mashable Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *2–7 (N.D. Cal. Oct. 9, 2025). *Torres v. SeatGeek, Inc.*, No. 25-cv-07118-LB, Dkt. 44, at 12–13 (N.D. Cal. May 28, 2026), dismissed for lack of Article III standing but separately rejected, at the pleading stage, the categorical contention that internet trackers fall outside § 638.51 and found plausible allegations that trackers collected information unnecessary to operating the website. Those decisions are persuasive, not controlling, but they foreclose Defendant's claim that Plaintiff's construction is legally impossible.

**2. The statute is not categorically confined to legacy telephone technology, and the CCPA supplies no implied exemption.**

Defendant relies on references to telephone lines in § 638.52, which governs applications for judicial orders. Mot. at 11–14. But the Legislature defined the regulated technology separately in § 638.50(b)–(c), using "device or process," "wire or electronic communication," and "routing,

addressing, or signaling information." Courts do not import limiting words from an ancillary application provision into an express definition. *Dyna-Med, Inc. v. Fair Employment & Housing Commission*, 43 Cal. 3d 1379, 1387 (1987).

Plaintiff does not contend the question is settled by binding appellate authority. *Fregosa* remains persuasive, but that action was stayed pending *Variety Media, LLC v. Superior Court*, No. B350578, which directly presents application of § 638.51 to internet trackers and has oral argument scheduled for August 25, 2026. *Fregosa v. Mashable Inc.*, No. 25-cv-01094-CRB, Dkt. 82 (N.D. Cal. Feb. 19, 2026). The absence of controlling state precedent does not authorize dismissal where the enacted text and substantial persuasive authority support Plaintiff's reading.

Nor does the CCPA silently authorize conduct regulated elsewhere. California Civil Code § 1798.175 provides that the CCPA supplements other privacy protections and, where laws conflict, favors the provision affording greater privacy protection. Regulation of IP information, targeted advertising, selling, or sharing under the CCPA does not create immunity under CIPA.

**3. Section 638.51 contains no categorical party-to-the-communication exemption.**

Defendant's asserted party exemption appears nowhere in the text. Section 638.51(b) enumerates limited exceptions for providers relating to operation, maintenance, fraud protection, service protection, or user consent. Courts ordinarily do not add an omitted exception to a detailed statutory scheme. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 116–18 (2006), also confirms that participant status is not a universal CIPA immunity. Whether Defendant can prove a statutory exception is a fact-specific defense; there is no categorical party bar to the pleaded § 638.51 claim.

**D. Plaintiff States a Claim Under the Federal Wiretap Act**

The Wiretap Act prohibits intentionally intercepting an electronic communication and intentionally using or disclosing contents known to have been unlawfully intercepted. 18 U.S.C. § 2511(1)(a), (c)–(d). For the reasons above, the Complaint plausibly alleges communication contents - product searches, page interactions, and Website activity - and contemporaneous browser-side acquisition. Compl. ¶¶ 12–13, 43–62, 95–100. It also alleges intentional deployment and use of

outside tracking code, not inadvertent receipt. Id. ¶¶ 43–75, 129–36. Defendant's contents and contemporaneity arguments therefore fail for substantially the same reasons as its § 631(a) arguments.

The one-party-consent issue requires separate analysis. Section 2511(2)(d) generally permits interception where one party consents; thus, Defendant's authorization of embedded third-party code may potentially supply consent even if a tracker was not itself an intended party. Plaintiff does not rest solely on the proposition that the trackers were outsiders. The statute withdraws that protection where the communication is intercepted "for the purpose of committing any criminal or tortious act" in violation of federal or state law. 18 U.S.C. § 2511(2)(d).

The pleaded unlawful purpose is independent of interception as an end in itself. Defendant allegedly arranged collection so outside advertising entities could aggregate Website activity with broader information, create persistent profiles, disclose and reuse the information across sites, target advertisements, and commercially exploit users' data without prior consent. Compl. ¶¶ 51–62, 68–75, 99, 129–36, 162–65. Those downstream purposes support the separately pleaded California constitutional privacy and computer-access theories. In *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090–92 (N.D. Cal. 2025), a purpose to invade privacy and commercially exploit data plausibly triggered the proviso; a financial motive did not immunize the conduct.

*Allison v. PHH Mortgage*, No. 25-cv-05323-RFL, Dkt. 50, at 18–19 (N.D. Cal. May 14, 2026), involved stronger allegations concerning sensitive financial information and express privacy representations. But its reasoning is pertinent: installing trackers to trade user information and reduce marketing costs plausibly alleged a purpose to invade privacy for profit. Here, product browsing is less sensitive, but the Complaint alleges a broader architecture of fingerprinting, session recording, location-linked profiling, third-party disclosure, and targeted commercial use. At the pleading stage, that alleged purpose is not reduced to the circular assertion that interception was unlawful merely because it was an interception.

Defendant also does not establish consent to every alleged use and disclosure under § 2511(1)(c)–(d). The Policy's existence does not prove Beltran's pre-collection assent or the scope

of any authorization. *Calhoun*, 113 F.4th at 1148–52; *Khoja*, 899 F.3d at 998–1003. The Wiretap Act claim should proceed.

**E. Plaintiff States a Claim Under California Penal Code § 502**

**1. The Complaint alleges statutory access, taking, copying, use, and browser-side computer activity.**

CDAFA § 502(c)(2) applies to one who knowingly accesses and, without permission, takes, copies, or uses data from a computer, computer system, or network. "Access" includes instructing, communicating with, storing data in, retrieving data from, or otherwise using computer resources. Cal. Penal Code § 502(b)(1). Defendant's hacking-only premise is contrary to that text. *United States v. Christensen*, 828 F.3d 763, 788–89 (9th Cir. 2015), held that § 502(c)(2), unlike the CFAA provision construed in *Nosal*, does not make unauthorized initial access indispensable where the defendant knowingly takes, copies, or uses data without permission.

The Complaint alleges browser instructions causing scripts, cookies, fingerprinting code, and session-recording processes to execute on Plaintiff's browser; collection and transmission of Website activity, identifiers, and device information; creation or use of persistent identifiers; and commercial use of the resulting information. Compl. ¶¶ 9–20, 38–65, 95–100, 137–57. Those facts plausibly allege instructing and communicating with a computer, storing or retrieving information, and taking or using data. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938–41 (N.D. Cal. 2023), likewise recognized that browser instructions and collection may constitute statutory access and use.

Plaintiff does not challenge the ordinary first-party HTTP request needed to receive a public webpage. He challenges additional tracking, fingerprinting, advertising, and session-recording processes allegedly caused to operate before permission and for purposes beyond page delivery. Voluntary navigation to a public site does not necessarily authorize every secondary browser instruction or third-party taking. The scope of permission is the limiting principle.

**2. The Complaint plausibly alleges economic appropriation; any need for greater Plaintiff-specific loss allegations warrants amendment.**

Section 502(e)(1) permits a civil action by an owner who "suffers damage or loss by reason of" a violation. Plaintiff does not rely on Defendant's enrichment alone as his statutory loss.

*DellaSalla v. Samba TV, Inc.*, No. 25-cv-03470-JSC, Dkt. 68, at 13–14 (N.D. Cal. Apr. 21, 2026), correctly explains that a defendant's gain does not itself establish the claimant's damage or loss and rejects equating Article III injury or disgorgement with § 502(e)(1).

The Complaint alleges loss of control over personal information and communications, unauthorized use, targeted advertising following the visit, and resulting damage and loss. Compl. ¶¶ 99, 138, 156–57. Plaintiff recognizes that paragraph 157 does not itemize a verification expenditure, specified monetary outlay, or diminished market transaction. If the Court concludes those existing allegations do not satisfy § 502(e)(1), that is a curable injury-pleading defect, not a reason to hold the alleged browser-side access and taking categorically outside § 502(c)(2). Plaintiff should be permitted to allege any supportable Plaintiff-specific expenditure, resource use, or other statutory loss.

**3. Defendant's control of the Website and alleged pre-consent deployment plausibly establish knowledge and lack of permission.**

Defendant is correct that knowledge of installed code is not automatically knowledge that access was "without permission." But the Complaint alleges more: Defendant itself programmed the alleged Trackers to activate immediately upon landing, before presenting any mechanism to consent or opt out, and nevertheless caused outside collection and use. Compl. ¶¶ 43–75, 95–100. Those facts support an inference that Defendant knew it had obtained no prior permission for the challenged timing and conduct.

That distinguishes decisions such as *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611, 2026 WL 1433958, at *5–7 (N.D. Cal. May 21, 2026), and *Manier v. Triple Lift Inc.*, No. 2:25-cv-03223, 2026 WL 1295546, at *6–7 (C.D. Cal. Apr. 15, 2026), where allegations did not plausibly connect the defendant's knowledge to an identified permission boundary. Generalized Policy language also cannot establish, as a matter of law, permission for every cookie write, fingerprint operation, session-recording event, data field, third-party transmission, or collection timing. *Calhoun*, 113 F.4th at 1148–52.

**F. The Rule of Lenity Provides No Independent Basis for Dismissal**

Lenity is a last-resort canon, not a rule that automatically selects Defendant's reading whenever two constructions are conceivable. Even for statutes with criminal and civil applications, it applies only after ordinary interpretive tools leave a grievous ambiguity. *Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013). Technological novelty, interpretive difficulty, or disagreement among lower courts is insufficient.

The California Supreme Court applied that rule to CIPA in *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202–03 (2021): alternatives must remain in "relative equipoise" after analysis of text, context, history, purpose, and policy. Defendant has not shown that equipoise. Section 638.50 expressly uses "device or process," "wire or electronic communication," and routing, addressing, or signaling information; the issue is actively disputed, but that does not erase the statutory language. The Wiretap Act claim likewise is governed by *Joffe*, and *Christensen* forecloses importing *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc), into materially different language in California § 502. 828 F.3d at 789.

**G. Plaintiff States a Claim Under Article I, Section 1 of the California Constitution**

**1. Plaintiff plausibly alleges a reasonable expectation of privacy in undisclosed third-party duplication, aggregation, and reuse.**

Beltran does not assert a right to conceal from The North Face that he intentionally visited its Website. He alleges an interest in preventing undisclosed third parties from contemporaneously duplicating his interactions, persistently identifying his browser or device, correlating activity with broader information, constructing profiles, and commercially reusing the resulting data without prior consent. Compl. ¶¶ 2, 8–20, 43–66, 95–100, 162–65. California recognizes informational privacy interests in improper acquisition, dissemination, and misuse. *Hill v. National Collegiate Athletic Association*, 7 Cal. 4th 1, 35–37 (1994); *White v. Davis*, 13 Cal. 3d 757, 774–76 (1975).

Reasonableness is contextual, including the nature of the information, identity and motives of the intruder, and manner of intrusion. *Hill*, 7 Cal. 4th at 36–37; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–88 (2009). There is no categorical public-website exception. The Policy is relevant context, but it does not conclusively prove pre-collection assent, disclosure of every tracker-

level practice, or consistency between the Policy and actual operation. *Calhoun*, 113 F.4th at 1148–52; *Khoja*, 899 F.3d at 998–1003.

*Facebook Tracking* supplies an important methodological principle, not a claim of factual identity. It sustained allegations of surreptitious browser tracking that enabled compilation of browsing histories and individualized profiles; the significance was the unseen collection and aggregation into a more revealing whole. 956 F.3d at 601–04. That case involved stronger logged-out and cross-site allegations than ordinary retail browsing. The Complaint here nevertheless alleges more than first-party observation: site-wide testing identified multiple categories of outside trackers, fingerprinting and session-recording technologies, and advertising networks, while Beltran alleges at least several alleged Trackers operated during his session and led to product-related targeting. Compl. ¶¶ 43–66, 95–100.

*Popa v. Microsoft Corp.*, 153 F.4th 784, 790–92 (9th Cir. 2025), regarded the particular session-replay conduct there as analogous to observing activity on one commercial site and distinguished broader aggregation. Beltran's theory is the broader combination: persistent identifiers, fingerprinting, session recording, geographic information, disclosure to outside advertising entities, cross-site profile building, and commercial reuse. Compl. ¶¶ 43–66, 95–100, 162–65. Whether the evidence proves that architecture cannot be decided by treating site-wide allegations as though they were absent or by assuming only ordinary cookies operated.

**2. The alleged method, persistence, third-party dissemination, and profiling plausibly cross the social-norm threshold.**

The seriousness inquiry is also contextual. Plaintiff does not allege that every cookie or routine analytics event is an egregious constitutional invasion. The alleged invasion is cumulative: covert third-party acquisition, persistent identification, fingerprinting, session recording, location-linked information, behavioral aggregation, transmission to advertising entities, cross-site profiling, and commercial reuse without prior consent. Compl. ¶¶ 43–66, 95–100, 162–65. *Riganian* similarly declined to hold at the pleading stage that users necessarily lacked a reasonable expectation of privacy where a third party allegedly aggregated information from disparate sources, linked it to identity profiles, and commercially exploited the result. 791 F. Supp. 3d at 1087.

The CCPA does not create a constitutional safe harbor. Its regulation of cross-context behavioral advertising, selling, sharing, and opt-out rights shows that California regulates those practices; it does not confer blanket consent for any implementation. Beltran's Plaintiff-specific allegations - a California visit, operation of alleged Trackers, collection and sharing, lack of prior consent, and product-related targeting - plausibly state a serious invasion. Compl. ¶¶ 95–100.

### H. Plaintiff States a UCL Claim

#### 1. Any surviving statutory predicate preserves the unlawful prong, and Plaintiff independently pleads unfair conduct.

The UCL borrows violations of other laws and treats them as independently actionable unlawful practices. *Rose v. Bank of America, N.A.*, 57 Cal. 4th 390, 396–98 (2013); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). The Complaint identifies § 631(a), the Wiretap Act, § 638.51, and § 502 as predicates. Compl. ¶ 170. Any surviving predicate preserves the unlawful prong. Paragraph 171 also alleges conduct contrary to legislatively declared privacy and consent policies. Because "unfair" and "unlawful" are distinct theories, *Zhang v. Superior Court*, 57 Cal. 4th 364, 370–71 (2013), the unfair theory is not merely mislabeled; Plaintiff does not, however, depend on it if every predicate were to fail.

#### 2. The Complaint alleges economic appropriation of Plaintiff's data; if the Court requires more under Moore, amendment is the proper remedy.

UCL standing requires Plaintiff's own loss of money or property, not merely a benefit realized by Defendant. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–25 (2011). The Complaint alleges that Beltran lost a legally protected interest in his personal information, data, and communications; that Defendant treated the information as its own property and used or sold it for profit; and that he experienced resulting product-related advertising. Compl. ¶¶ 99, 156, 172. Some decisions recognize that unauthorized appropriation of commercially exploited information may implicate an economic interest. See *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1022–24 (N.D. Cal. 2024).

Plaintiff nevertheless recognizes the constraint imposed by *Moore v. Centrelake Medical Group, Inc.*, 83 Cal. App. 5th 515, 537–39 (2022). *Moore* held that taking data with market value

did not adequately plead lost market value absent allegations that plaintiffs intended to participate in that market, otherwise derived economic value, or lost a prospective value-for-value transaction. The present Complaint does not allege a price premium, specified out-of-pocket charge, or attempted data sale. Defendant's enrichment alone cannot supply standing. If the Court finds the existing loss-of-control and appropriation allegations insufficient under *Moore*, Plaintiff should receive leave to allege any supportable Plaintiff-side expenditure, deprivation, transaction, or property loss; *Moore* does not establish futility.

**3. *Sonner* concerns equitable remedies, not UCL statutory standing, and damages do not necessarily redress threatened future tracking.**

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841–44 (9th Cir. 2020), and *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1311–14 (9th Cir. 2022), impose a genuine federal-equity limitation: a UCL plaintiff may not obtain equitable relief for an injury adequately redressed by a legal remedy, even where the legal claim is unavailable because of a limitations defect. Plaintiff does not treat that requirement as a procedural anomaly.

Beltran, however, seeks prospective relief for prospective conduct. He alleges that he intends to access the Website again but seeks to do so without unauthorized third-party interception or with a meaningful choice whether collection occurs. Compl. ¶ 103. Statutory damages for completed interceptions compensate past events; they do not stop new browser-side collection when Plaintiff returns. To the extent damages fully redress a completed past injury, *Sonner* and *Guzman* may limit restitution or duplicative equitable relief. They do not establish at the pleading stage that legal damages necessarily provide an adequate remedy for the threatened future tracking alleged here. Any need to plead that distinction more expressly warrants amendment, not dismissal with prejudice.

## I. Any Curable Deficiency Warrants Leave to Amend

Dismissal with prejudice is unwarranted because Defendant cannot establish futility. Rule 15 embodies a strong policy favoring amendment, and leave should be freely given absent undue delay, bad faith, repeated failure to cure, undue prejudice, futility, or similar reasons. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52

(9th Cir. 2003). In the Rule 12(b)(6) context, dismissal without leave to amend is improper unless the Court determines that additional facts consistent with the Complaint could not possibly cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401–02 (9th Cir. 1986). Any perceived deficiency here concerns factual specificity and is curable: Plaintiff can amend to allege any supportable additional facts concerning Defendant's knowledge of Beltran's California location and forum-directed tracking, the particular Trackers that operated during his session, the browser side acquisition sequence and timing, consent and permission boundaries, vendor-specific transmissions and uses, Plaintiff-specific loss under section 502(e)(1), UCL economic injury, and the basis for prospective equitable relief. Those potential amendments are consistent with the existing allegations and demonstrate that the claims are not legally futile. Accordingly, if the Court dismisses any claim or finds the jurisdictional allegations insufficient, Plaintiff respectfully requests leave to amend.

## IV. CONCLUSION

The Motion asks the Court to disregard Plaintiff-specific allegations, adopt Defendant's unsupported technical account, resolve disputed consent and permission questions through a noticed Policy, treat outside tracker operators as parties to every communication, and convert unsettled statutory questions into categorical immunity. Rule 12 permits none of those steps. The Complaint establishes a prima facie basis for jurisdiction and plausibly states the § 631(a), § 638.51, Wiretap Act, § 502(c)(2), constitutional privacy, and derivative UCL theories.

The Motion should be denied. If the Court concludes that any claim requires greater Plaintiff-specific detail concerning a tracker, acquisition sequence, permission boundary, statutory loss, UCL injury, or basis for prospective equitable relief, Plaintiff respectfully requests leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

Dated: August 21, 2026

**POTTER HANDY, LLP**

By: _/s/ James M. Treglio__________
James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff