**ASHURST PERKINS COIE US LLP**

Nicola C. Menaldo (*pro hac vice*)
Nicola.Menaldo@ashurstperkins.com
1301 Second Ave., Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.3787
Facsimile: +1.206.359.4787

Hayden M. Schottlaender (*pro hac vice*)
Hayden.Schottlaender@ashurstperkins.com
2699 Howell Street, Suite 700
Dallas, Texas 75204
Telephone: +1.214.965.7700
Facsimile: +1.214.965.7799

Jameson A. Ullman
Jamie.Ullman@ashurstperkins.com
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile: +1.415.344.7050

Attorneys for Defendant VF Outdoor, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN BELTRAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VF OUTDOOR, LLC, a Delaware Limited Liability Company, and Does 1-100, inclusive,<br><br>Defendant. | Case No. 4:26-cv-02245-HSG<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Date: October 1, 2026<br>Time: 2:00 PM<br>Courtroom: 2<br>Judge: Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1

II. LACK OF PERSONAL JURISDICTION (RULE 12(b)(2)) ........ 2

III. FAILURE TO STATE A CLAIM FOR RELIEF (RULE 12(b)(6)) ........ 3

- A. Plaintiff Fails to State a Wiretapping Claim Under CIPA § 631(a). ........ 3
  - 1. Plaintiff fails to allege willfulness and lack of consent. ........ 4
  - 2. Plaintiff fails to plead an attempt to read in transit. ........ 6
- B. Plaintiff Fails to State a Pen Register Claim Under CIPA § 638.51(a). ........ 7
- C. Plaintiff Fails to State a Federal Wiretap Act Claim. ........ 8
- D. Plaintiff Fails to State a CDAFA Claim. ........ 10
- E. Plaintiff's Constitutional Privacy Claim Fails. ........ 12
- F. Plaintiff's UCL Claim Fails. ........ 13

IV. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allison v. PHH Mortgage*,
No. 25-cv-05323, 2026 WL 1353827 (N.D. Cal. May 14, 2026) ........ 10

*Briskin v. Shopify*,
135 F.4th 739 (9th Cir. 2025) ........ 2, 3, 7

*Briskin v. Shopify Inc.*,
No. 21-cv-06269, 2026 WL 2200418 (N.D. Cal. July 30, 2026) ........ 7

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 10

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 11

*Cody v. E. Gluck Corp.*,
No. 23-cv-02286-HSG, 2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) ........ 4

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ........ 1, 4

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 10

*Doe v. Eating Recovery Center LLC*,
806 F.Supp.3d 1109 (N.D. Cal. 2025) ........ 12

*Doe v. Talkiatry Mgmt. Servs., LLC*,
No. 25-cv-00781, 2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) ........ 5

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ........ 11

*Gliksman v. Healthline Media, LLC*,
No. 24-cv-08650, 2026 WL 1908082 (N.D. Cal. July 2, 2026) ........ 6

*Gutierrez v. Converse Inc.*,
No. 23-cv-06547, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ........ 10, 11

*Hammerling v. Google, LLC*,
No. 21-cv-09004, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd,* No. 22-17024, 2024 WL 937247 (9th Cir Mar. 5, 2024) ........ 9

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 12

*In re Blue Shield of Cal. Priv. Litig.*,
No. 4:25-CV-03209, 2026 WL 2040561 (N.D. Cal. July 10, 2026) ........ 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....6

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ....11

*In re iPhone Application Litig.*,
No. 11-MD-02250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ....11

*J.S. v. Spring Fertility Holdings, LLC*,
No. 24-cv-07374, 2026 WL 1483490 (N.D. Cal. May 27, 2026)....6, 9

*Katz-Lacabe v. Oracle Amer., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....10

*L.B. v. LinkedIn Corp.*,
No. 24-cv-06832, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ....6

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....9

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022)....3

*Manier v. Triple Lift Inc.*,
No. 25-cv-03223, 2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ....5, 6, 12

*Mikulsky v. Bloomingdale's*,
LLC, No. 24-3564, 2025 WL 1718225 (9th Cir. June 20, 2025), *reversing Mikulsky v. Bloomingdale's LLC*, No. 23-cv-00425, 2024 WL 3091395 (S.D. Cal. May 14, 2024). ....6

*N.Z. v. Fenix Int'l Ltd.*,
No. 24-cv-01655, 2025 WL 3627591 (C.D. Cal. Dec. 12, 2025)....11

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)....8

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)....3

*Perez v. Romantix Online, Inc.*,
No. 25-cv-02465, 2026 WL 1802589 (N.D. Cal. June 23, 2026)....13

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)....9, 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....13

*Ramirez v. Trusper*,
No. 24-cv-02012, 2026 WL 2351235 (N.D. Cal. Aug. 13, 2026) ....10

*Ramos v. Gap, Inc.*,
No. 23-cv-04715-HSG, 2024 WL 4351868 (N.D. Cal. Sept. 30, 2024)....1, 4, 13

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 10

*Rounds v. Case-Mate Inc.*, No. 24-cv-08531, 2025 WL 1873999 (C.D. Cal. July 2, 2025) ........ 2, 3

*Rounds v. Dev. Dimensions Int'l, Inc.*, No. 25-cv-01975, 2025 WL 4055402 (C.D. Cal. Dec. 15, 2025) ........ 2

*Rupert v. Bond*, 68 F. Supp. 3d 1142 (N.D. Cal. 2014) ........ 2

*Rusow v. SkinSpirit Essential LLC*, No. 24-cv-09317, 2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ........ 10

*Shah v. Hilton Worldwide Holdings Inc.*, No. 25-cv-01018, 2025 WL 1683577 (N.D. Cal. June 11, 2025) ........ 2

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 4, 5

*Sonner v. Premier Nut. Corp.*, 971 F.3d 834 (9th Cir. 2020) ........ 13

*Thomas v. Papa John's International, Inc.*, Nos. 24-3557, 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025) ........ 3

*Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2023 WL 6370641 (S.D. Cal. Aug. 14, 2023) ........ 3

*Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 8, 12

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ........ 11

*Valenzuela v. Keurig Green Mountain, Inc.* 674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 9

**STATUTES**

Cal. Civ. Code § 1798.140(k) ........ 13

Cal. Penal Code § 637.2(d)(1) ........ 7

Cal. Penal Code § 637.2(d)(2) ........ 7

Federal Wiretap Act ........ 8, 9

## I. INTRODUCTION

Time and again, Plaintiff insists that he has alleged facts sufficient to sustain each of his claims, but a careful comparison of the Opposition's assertions to the actual Complaint reveals the opposite. The Opposition repeatedly conflates allegations about what various tracking technologies *could* do to *some* people with what any particular technology *actually* did to *him.* That rhetorical sleight of hand cannot survive scrutiny; a complaint must contain allegations, not aspirations.

The gap between Plaintiff's briefing and his pleading pervades every claim. On his Section 631(a) wiretapping theory, Plaintiff insists that "at least several of" the 151 "site-wide trackers" allegedly on VF's website *could* have collected his data, which *could* "plausibly contain 'contents'" of communications—without any allegations identifying which third party allegedly intercepted which communication, or how. On his pen register claim, Plaintiff asserts that the Complaint "alleges that . . . Trackers . . . collected his IP address," when the Complaint actually says only that "Trackers . . . collect identifying information of Plaintiff and Class Members, including IP addresses." His *actual* allegation is a carefully worded generality missing the necessary allegation that a particular "tracker" collected *his* IP address through a particular communication. And on his constitutional privacy claim, Plaintiff rattles off a list of things that advertising technology companies *can* do, like correlating activity, constructing profiles, or reusing data, without a single allegation that the companies referenced in the Complaint (let alone VF) actually did any of those things to him.

This Court should not permit Plaintiff to paper over these deficiencies by treating his Opposition brief as an amended complaint. The standard is well established: VF is entitled to know "'the who, what, when, where, and how' of the alleged conduct"[1] so that it can mount a defense. Lengthy and generic descriptions of how internet advertising technologies work do not satisfy that standard. The Complaint fails to connect any specific technology to any specific action taken against this specific Plaintiff, and no amount of post-hoc briefing can fill that deficiency. Each of Plaintiff's claims should be dismissed for the reasons set forth below.

---

[1] *Ramos v. Gap, Inc.*, No. 23-cv-04715-HSG, 2024 WL 4351868, at *2 (N.D. Cal. Sept. 30, 2024) (Gilliam, J.) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## II. LACK OF PERSONAL JURISDICTION (RULE 12(b)(2))

Plaintiff's reliance on *Briskin v. Shopify* to establish specific personal jurisdiction over VF fails. 135 F.4th 739, 750-51 (9th Cir. 2025). First, Plaintiff misunderstands the evidentiary burdens upon each party. *He* bears the burden of establishing purposeful direction. *Id.* at 751. This requires him to proffer evidence in support. *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1153 (N.D. Cal. 2014) ("If a defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.") (internal quotations omitted). Plaintiff offers none, relying on allegations alone, even where he recognizes that VF has put those allegations in dispute. *See* Opp. at 4; *Rupert,* 68 F. Supp. 3d at 1153 ("Uncontroverted allegations in the complaint must be taken as true, though Plaintiff cannot simply rest on the bare allegations of its complaint.") (citation modified).[2]

Second, the Motion already distinguishes *Briskin* on the basis that the defendant in that case, Shopify, "was not the host website, but the party that was collecting information on Californians." *Rounds v. Dev. Dimensions Int'l, Inc.*, No. 25-cv-01975, 2025 WL 4055402, at *4 (C.D. Cal. Dec. 15, 2025) (granting jurisdictional motion to dismiss by distinguishing *Briskin* on exactly that basis); *see also* Mot. at 7 n. 2. This is pivotal; without *already possessing* information on an alleged California consumer like Plaintiff, there is no way that VF can know their location at the time that VF allegedly "cause[s] executable tracking processes to operate." Opp. at 4. And so, as the Motion already articulated—and Plaintiff has chosen to ignore—Plaintiff lacks evidence that VF's "contacts with California did not merely arise from California *consumers'* choice" to visit VF's website. *Rounds v. Case-Mate Inc.,* No. 24-cv-08531, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025). More to the point of *Briskin*, Plaintiff lacks evidence that VF targeted *him*, *in California*. *See Shah v. Hilton Worldwide Holdings Inc.*, No. 25-cv-01018, 2025 WL 1683577, at *2 (N.D. Cal. June 11, 2025) (another case that Plaintiff fails to address, dismissing similar claims based on Hilton's website because of the same lack of location knowledge at the time of the website visit).

---

[2] To the extent the Court believes that additional evidence is necessary to resolve VF's pending jurisdictional motion (as Plaintiff has requested leave to collect), VF is willing to submit a supplemental declaration on dispositive issues.

Plaintiff's citation to the unpublished *Thomas v. Papa John's International, Inc.* does not move the needle. Nos. 24-3557, 24-3834, 2025 WL 1704437, at *1–2 (9th Cir. June 18, 2025). That unpublished opinion merely repeated *Briskin* without analysis in affirming a district court finding of specific personal jurisdiction that turned heavily on that defendant's "operation of . . . 130 retail outlets in California" and "the integration of the website with those stores." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2023 WL 6370641, at *1–2, *4 (S.D. Cal. Aug. 14, 2023). Similar facts are not alleged here.[3]

Finally, a "mere hunch that discovery might yield jurisdictionally relevant facts" is "insufficient" for a court to grant jurisdictional discovery. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864–65 (9th Cir. 2022) (internal citations omitted). And jurisdictional discovery is inappropriate when a "plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations." *Rounds v. Case-Mate Inc.*, No. 24-cv-08531, 2025 WL 1873999, at *4 n. 5 (C.D. Cal. July 2, 2025) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)) (denying jurisdictional discovery seeking information regarding third-party installation of advertising trackers on website where plaintiff made only vague allegations regarding their use of the website). But if the Court believes jurisdictional discovery is warranted in this case, that discovery should be limited to the narrow question of whether there is evidence that VF knew Plaintiff's location at the time that Plaintiff visited the site "in and around February 2026." Compl. ¶ 95.

## III. <u>FAILURE TO STATE A CLAIM FOR RELIEF (RULE 12(b)(6))</u>

### A. Plaintiff Fails to State a Wiretapping Claim Under CIPA § 631(a).

Plaintiff's Opposition concedes that he does not have a viable "second clause" claim under Section 631(a) because VF is a party to any communication and cannot wiretap its own website. Mot. at 9-10. So Plaintiff goes all-in on a "fourth clause" claim that VF aided a third party in otherwise violating Section 631(a).

The fundamental problem with Plaintiff's Section 631(a) claim, regardless of clause, is that

[3] VF also expressly preserves its argument that *Briskin* was wrongly decided for the well-supported reasons that Judge Callahan described in her dissent from that opinion. 135 F. 4th at 774–77.

his Complaint is utterly devoid of "'the who, what, when, where, and how' of the alleged conduct," so as to provide VF with sufficient information to defend against the charge. *Ramos v. Gap*, *Inc*., No. 23-cv-04715-HSG, 2024 WL 4351868, at *2 (N.D. Cal. Sept. 30, 2024) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In the context of Section 631(a)'s fourth clause, this means identifying which "third party" VF allegedly aided in intercepting which "communication" between him and VF, and how that communication was allegedly intercepted. It should not be challenging for Plaintiff to provide these basic facts in support of his claim.

Plaintiff's Opposition contends that the Complaint does enough by identifying 151 "site-wide trackers" because "at least several" of those trackers could have operated to collect his information which could "plausibly contain 'contents'" of communications. Opp. at 6. That is plainly insufficient. VF cannot defend itself against unknown and hypothetical theories, particularly where even Plaintiff acknowledges that his claims are "tracker-specific." Opp. at 7. For example, derivative "fourth clause" liability requires a willfulness allegation that "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis added). Not only is such an allegation missing from the Complaint, but VF cannot even reasonably explain why that allegation would be baseless because it does not know which third party is at issue. As another example, whether communications "content" is at issue for purposes of a Section 631 claim is still unknown, because a defendant's collection of referrer URLs is analyzed differently than a collection of mouse clicks or search bar entries. *See Ramos*, 2024 WL 4351868, at *6. The information about what exactly Plaintiff did on VF's website, and which "third parties" are at issue are a "fundamental part" of a Section 631 claim. *Cody v. E. Gluck Corp*., No. 23-cv-02286-HSG, 2024 WL 4314187, at *2 (N.D. Cal. Sept. 26, 2024); *see also* Mot. at 9 (collecting cases dismissing Section 631(a) claims on this basis).

1. <u>Plaintiff fails to allege willfulness and lack of consent.</u>

To plead a violation under the fourth clause of CIPA section 631(a), Plaintiff "must first show" that a third party "engaged in conduct prohibited by the first, second, or third clause." *Smith*, 754 F. Supp. 3d at 940. As explained above, Plaintiff has already failed to meet this pleading

standard by (a) failing to identify a specific third party and (b) failing to articulate that third party's engagement with him and his data. Had he done so, his claim would still fail because Plaintiff would then have needed to plead that the third parties (whomever they may be) *knowingly* violated Section 631 and that VF *knowingly* aided in this violation. *Smith*, 754 F. Supp. 3d at 942–43. Having failed to plead *any* facts regarding whether the third parties knew that their alleged interception violated CIPA, let alone that VF knew, Plaintiff has not met these elements either. In short, "the FAC provides no factual support as to either Defendant or [the third party's] intent nor the use of the purported confidential communications. The FAC seems to assume Meta and other third parties knew or had reason to know that the information was obtained in violation of the law without any factual basis. . . . Without requisite intent by [the third party], there is no unlawful conduct for Defendant to aid and abet." *Doe v. Talkiatry Mgmt. Servs., LLC*, No. 25-cv-00781, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025).

In opposition, Plaintiff unsuccessfully attempts to overcome these pleading deficiencies by pointing to allegations that VF selected and used the third-party technologies, "benefited" from them, "programmed" them, and knew third parties used them for targeting ads. *See* Opp. at 7. This is a far cry from allegations of intentional criminal interception and does not come close to sustaining his pleading burden. *See Smith*, 754 F. Supp. 3d at 942–43 (finding defendant's implementation of a third-party's payment software that allegedly intercepted consumers' personal information was insufficient to "plausibly infer . . . that Defendant knew that [the third-party's] services were based on its illegal interception").

VF's privacy policy further undermines any inference of willfulness. Courts consistently hold that a policy showing an intent to disclose and obtain consent for third-party advertising technologies negates willfulness. *Manier v. Triple Lift Inc.*, No. 25-cv-03223, 2026 WL 1295546, at *3 (C.D. Cal. Apr. 15, 2026) (dismissing § 631(a) claim because defendant's "policies reflect an intent against deliberately collecting data without consent"). VF's privacy policy reflects this intent, rendering any inferences of willfulness in the Complaint implausible. Ex. 1, at 7 ("With Your Consent or at Your Direction: We make personal information available to third parties when we have your consent, or you intentionally direct us to do so."). Plaintiff confuses this argument with

an attempt to prove "consent." Opp. at 8. That is misguided; VF's privacy policy, which Plaintiff acknowledges is properly noticed (Opp. at 2), merely shows that VF is not willfully attempting to aid in the collection of data without consent, just as in *Manier*.[4]

2. Plaintiff fails to plead an attempt to read in transit.

Plaintiff was required to allege that the third parties "read [his] communications during their transmission," including "specific facts about 'when the interception occurs.'" *J.S. v. Spring Fertility Holdings, LLC*, No. 24-cv-07374, 2026 WL 1483490, at *5–7 (N.D. Cal. May 27, 2026). Vague allegations that an entity was sent data when a user was "browsing a website," or that an entity "beg[an] tracking [user] activity the moment they entered [the websites]" are not sufficient. *L.B. v. LinkedIn Corp.*, No. 24-cv-06832, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025). Similarly, allegations that an entity "automatically records" user communications are not enough, because they do not indicate whether the recording "occur[red] during transit or [if] it can take place after receipt." *Id.*

The Opposition claims that Plaintiff alleged that "user actions" are sent to the third parties "as they occur," but none of the cited portions of the Complaint support this assertion. Opp. at 8. Further, Plaintiff's allegations regarding "automatic transmission," (*id.*) do not articulate when, or whether, the third parties attempt to read the intercepted communications.

Again, Plaintiff's cited authorities are inapposite. Neither *In re Facebook Tracking* nor *Mikulsky* addresses the standard for "in-transit" interception. *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607–08 (9th Cir. 2020) (addressing whether the party exception applies, without mentioning the word "transit."); *Mikulsky v. Bloomingdale's*, *LLC*, No. 24-3564, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025) (addressing CIPA only with respect to the statute's "contents of [] communications" requirement in case where that Plaintiff alleged a very particular technology supplied by FullStory captured specific purchase activity on defendant's website), *reversing Mikulsky v. Bloomingdale's LLC*, No. 23-cv-00425, 2024 WL 3091395 (S.D. Cal.

---

[4] Plaintiff's citation to *Gliksman v. Healthline Media, LLC*, No. 24-cv-08650, 2026 WL 1908082 (N.D. Cal. July 2, 2026) is unpersuasive because, as Plaintiff acknowledges, the *Gliksman* court found willfulness based on "additional notice facts, including prior litigation and a government settlement" not present here. Opp. at 7.

May 14, 2024). And Plaintiff's citation to the post-remand order in *Briskin v. Shopify Inc.*, No. 21-cv-06269, 2026 WL 2200418 (N.D. Cal. July 30, 2026), only undermines his position. There, the plaintiff included specific allegations regarding in transit reading, including that certain parts of the data validation process "required contemporaneous access to the contents of the communications while they were in transit" and that Shopify's systems were designed to "read, and act upon incoming data streams in real time, as the data is transmitted . . . ." *Id.* at *5. Plaintiff's Complaint, in contrast, includes none of this detail.

**B. Plaintiff Fails to State a Pen Register Claim Under CIPA § 638.51(a).**

Since VF filed its Motion, the California Legislature has unanimously voted to end private litigation under Section 638.51(a). Under the new version of the law, which goes into effect January 1, 2027 absent a gubernatorial veto that must occur in the next two weeks, "[a]n action against a private actor for a violation of Section 638.51 alleged to arise from conduct occurring on an internet website, online application, or mobile application may be brought under this section only by the Attorney General." Cal. Penal Code § 637.2(d)(1). That section retroactively applies to any action commenced in the prior two years—including this one. *Id.* § 637.2(d)(2). If the law goes into effect by the time the Court rules on VF's Motion, it provides an ironclad basis to dismiss the claim.

The parties' briefing on Plaintiff's pen register claim otherwise sufficiently describes why Plaintiff's pen register claim should be dismissed. Only two points in the Opposition warrant reply.

First, Plaintiff is simply wrong that the Complaint alleges sufficient facts to maintain his pen register claim. VF proffered multiple cases holding that a plaintiff must allege facts concerning which particular advertising technologies the plaintiff encountered, how the defendant allegedly installed those technologies with respect to the plaintiff, what data was collected from plaintiff, and why that data qualifies as "dialing, routing, addressing, or signaling [(DRAS)] information" under Section 638.50(b). Mot. at 12. Plaintiff has supplied exactly zero authorities supporting his scattershot approach of alleging that some unknown combination of "Trackers" collected some unknown types of data from some unknown groups of people. Opp. at 9. Nor does the Complaint even "allege[] that . . . Trackers . . . collected his IP address," as he argues. Opp. at 9-10. The closest it comes is to loosely allege that the "Trackers . . . collect identifying information of Plaintiff and

Class Members, including IP addresses." Compl. ¶ 122. That is a carefully worded statement apparently crafted to avoid what Plaintiff appears to be unable or unwilling to allege: that VF collected *his* IP address in any particular way. A vague allegation about "identifying information" untethered to any particular mechanism or installation is insufficient to state a claim for violation of Section 638.51. *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) (dismissing pen register claim even where that plaintiff included far more detail about the alleged information at issue, because plaintiff failed to allege that information was used for DRAS and never identified the electronic communication that it accompanied).[5]

Second, it is undisputed that there is no express textual "party" exemption within CIPA's pen register provisions. VF's argument (which goes unaddressed) is that CIPA's pen register provisions must be read in harmony with the rest of CIPA, which concerns itself with protecting the confidentiality of private communications and prohibiting eavesdropping. Mot. at 14. Those concepts have no application where VF is a party to the communications at issue. *Id.*

### C. Plaintiff Fails to State a Federal Wiretap Act Claim.

Plaintiff's attempt to restyle his wiretap claims as an "aiding" theory is fatal to his federal Wiretap Act claim, as the federal Wiretap Act does not authorize claims for derivative offenses. *See, e.g., In re Blue Shield of Cal. Priv. Litig.*, No. 4:25-CV-03209, 2026 WL 2040561, at *7 (N.D. Cal. July 10, 2026) ("[P]rocurement-based liability is unavailable in a private suit"); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (the federal Wiretap Act "authorizes a civil action by one whose covered 'communication is *intercepted, disclosed, or intentionally used in violation of this chapter'*, from "the person or entity *which engaged in that violation*," which "refers only to illegal interception, disclosure, or use, and not to procuring interception by another") (emphasis in original).

Regardless, as explained in the CIPA Section 631(a) arguments, *supra* Section III(A),

[5] The Opposition's arguments about "directionality" and *mea culpa* as to whether Plaintiff should have instead alleged a trap-and-trace claim exemplify the Complaint's problems. Opp. at 10. The Court cannot even identify whether any particular data at issue is viable DRAS for a pen register claim because neither VF nor the Court can tell what particular communication is put at issue by the Complaint.

Plaintiff failed to allege any facts specifically identifying the communications allegedly intercepted, or how interception occurred. *Valenzuela v. Keurig Green Mountain, Inc.* 674 F. Supp. 3d 751, 758–59 (N.D. Cal. 2023) (rejecting allegations that merely recited "real time" interception without explaining how or when the alleged interception occurred); *Hammerling v. Google*, *LLC*, No. 21-cv-09004, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (claiming collection of "'real-time data' do[es] not plausibly allege 'in transit'" element), *aff'd,* No. 22-17024, 2024 WL 937247 (9th Cir Mar. 5, 2024). Plaintiff's loose citations to broad swaths of the vague Complaint accomplish nothing that has not already been addressed above.

Plaintiff also continues to misunderstand and therefore ignore VF's willfulness argument. A claim under the federal Wiretap Act requires that VF acted with the "deliberate[] . . . goal of intercepting" Plaintiff's communications. As already explained, VF did not introduce its privacy policy to establish "consent," as Plaintiff argues, but to show that VF did not seek to engage in unconsented-to interception, precluding a finding of willfulness. Mot. at 17.

Finally, the briefs make clear that both parties agree on the following:

- Any alleged "interception" under the federal Wiretap Act is lawful where one party consents. Opp. at 12.
- Under *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022), whether ECPA's crime-tort exception applies (so as to save Plaintiff's Wiretap Act claim) depends on whether Plaintiff has adequately alleged that VF engaged in the alleged interception for a "criminal or tortious purpose . . . independent of and separate from the purpose of the recording."
- "Fundraising" is not such a criminal or tortious purpose. *Id.*; *see also Lakes v. Ubisoft, Inc.,* 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025) (rejecting invocation of crime-tort exception where alleged purpose of data collection was improved advertising and marketing); *J.S.*, 2026 WL 1483490, at *3–4 (N.D. Cal. May 27, 2026) (same).

Despite this—and despite the fact that his Complaint squarely alleges that VF intercepted his communications for the purpose of "analyz[ing] Website data and marketing campaigns, conduct[ing] targeted advertising, and boost[ing] Defendant's revenue," Compl. ¶ 94—Plaintiff's Opposition suggests that VF's purpose was actually "to invade privacy." Opp. at 12. This, of course, is not alleged in the Complaint, is contradicted by the allegations in the complaint that supply an alternative, commercial basis for the conduct, and is implausible in any event.

Plaintiff attempts to enervate his own allegation by pointing to *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025), and *Allison v. PHH Mortgage*, No. 25-cv-05323, 2026 WL 1353827, at *7–8 (N.D. Cal. May 14, 2026)—two non-binding decisions that ignore binding Ninth Circuit precedent in *Planned Parenthood*, 51 F.4th 1125. As multiple courts have held, the crime-tort exception does not apply to the installation of advertising trackers because "monetiz[ation] [of] data for targeted advertising" is not a separate, criminal or tortious purpose. *See Rusow v. SkinSpirit Essential LLC,* No. 24-cv-09317, 2025 WL 4657637, at *15 (N.D. Cal. Oct. 15, 2025)*; Doe I v. Google LLC,* 741 F. Supp. 3d 828, 843 n. 4 (N.D. Cal. 2024) (same)*; Ramirez v. Trusper,* No. 24-cv-02012, 2026 WL 2351235, at *8 (N.D. Cal. Aug. 13, 2026) (same)*; Katz-Lacabe v. Oracle Amer., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same). Plaintiff's argument and cited authorities are also unconvincing because they are inherently circular; they extinguish an obvious exception to a federal criminal law (you are not a criminal for recording your own conversations) wherever a plaintiff can develop a creative tort to assign to that recording, which is precisely when the exception is intended to apply.

Finally, as Judge Davila recently recognized, *Riganian* does not provide that financial motives are sufficient to satisfy the crime-tort exception; a plaintiff must still allege a non-financial criminal *purpose* to the interception, which Plaintiff has not done here. *Ramirez,* 2026 WL 2351235, at *8.

### D. Plaintiff Fails to State a CDAFA Claim.

As VF described in its Motion, the Complaint does not sufficiently allege what VF "took" from Plaintiff's computer, or how the "access" it obtained differed from ordinary internet access, as required to sustain a CDAFA claim. *See* Mot. at 18. Plaintiff argues that this is not necessary to state a claim under CDAFA, but the vast majority of courts agree with VF. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 123 (N.D. Cal. 2020) (allegations that defendant enables relevant feature on its application in three situations, without alleging that the relevant feature was enabled when plaintiff used the application, were insufficient); *Gutierrez v. Converse Inc.*, No. 23-cv-06547, 2023 WL 8939221 at *4 (C.D. Cal. Oct. 27, 2023) (allegations that defendant "controlled [its] website and presumably designed the website to facilitate the so-called 'interception' and 'diversion' were

insufficient to allege that data was taken without permission); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715–16 (N.D. Cal. 2011) (dismissing § 502 claims where plaintiffs did not allege circumvention of technical barriers), *aff'd*, 572 F. App'x 494 (9th Cir. 2014).

And Plaintiff's lone case, *Brown*, is in VF's favor. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938–41 (N.D. Cal. 2023). Those plaintiffs specifically alleged that Google collected the URLs of webpages visited and query terms while searching for sensitive information, and explained the HTTP request process used to collect this information. Here, Plaintiff has completely failed to allege the operative facts of what data was taken from him and how.

As to Plaintiff's damages allegations, which VF argued were woefully insufficient, *see* Mot. at 19, Plaintiff appears to agree. He agrees that he must allege some form of damage or loss beyond VF's alleged benefit or the abstract value of his personal information. *See* Opp. at 14. He admits that the Complaint "does not itemize a verification expenditure, specified monetary outlay, or diminished market transaction." *Id.* His only retort is to point to insufficient allegations of generalized harm, then to request a second chance to include a proper damages allegation under CDAFA. *Id.* That chance need not be granted given that Plaintiff could not even articulate that theory in his Opposition briefing. *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (affirming district court's denial of plaintiff's request for leave to amend because plaintiff failed to "explain how they would cure the deficiencies in the first amended complaint").

Finally, courts generally require a plaintiff to plead that a defendant "overc[ame] technical or code-based barriers," to show that the defendant accessed their data "without permission." *In re Facebook Priv. Litig.,* 791 F. Supp. 2d at 716 (N.D. Cal. 2011); *In re iPhone Application Litig.*, No. 11-MD-02250, 2011 WL 4403963, at * 12 (N.D. Cal. Sept. 20, 2011). Plaintiff attempts to argue that "technical circumvention" is not necessary based on *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015), but *Christensen* only considered the definition of "access," not "without permission." As such, even after *Christensen,* courts still require allegations of circumvention or overcoming of "technical or code-based" barriers to satisfy the "without permission" element, and Plaintiff has made no such allegations. *See Gutierrez,* 2023 WL 8939221, at *4; *N.Z. v. Fenix Int'l Ltd.*, No. 24-cv-01655, 2025 WL 3627591, at *14 (C.D. Cal. Dec. 12, 2025) (citation modified)

(collecting cases).[6]

Finally, Plaintiff's assertion that VF "itself programmed the trackers to activate immediately upon landing," Opp. at 14, does not plausibly allege that VF knowingly collected data without permission. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) (finding that plaintiff failed to sufficiently allege data was knowingly sent without permission when defendant installed tracking technology on its own website); *Manier*, 2026 WL 1295546, at *4–5; *Tsering*, 2026 WL 1433958, at *1–2. Plaintiff's attempt to distinguish *Tsering* and *Manier* by vaguely arguing that they "did not plausibly connect the defendant's knowledge to an identified permission boundary" falls flat, as Plaintiff provides no explanation as to what this "permission boundary" is or how it is relevant to this analysis. Opp. at 14.

### E. Plaintiff's Constitutional Privacy Claim Fails.

The Opposition's defense of Plaintiff's constitutional privacy claim reflects the deficiencies of the current Complaint. VF's central criticism of the Complaint is that it lacks sufficient allegations about what, specifically, VF (or now, apparently, some combination of unknown third parties) collected about Plaintiff and how. Plaintiff then *weaponizes* this vagueness to defend his constitutional privacy claim by randomly naming activities that some advertising technology companies *can* do, without any tether to what VF did *to him*. Opp. at 15. The Complaint has no allegation that VF "correlat[ed his] activity with broader information," or "construct[ed a] profile[]" ***about him***, or "reus[ed] the resulting data." *Id*. There exists a veritable chasm between what Plaintiff *argues* he alleged, and what the Complaint *actually* alleges. The Court should accept Plaintiff's invitation to review the dozens of paragraphs Plaintiff cites in this section, which reveal the plainly missing allegations necessary to support Plaintiff's claim. Opp. at 16 (citing Compl. ¶¶

[6] Again, any dispute as to the proper interpretation of terms under CDAFA, CIPA, or ECPA should be resolved in favor of VF under the Rule of Lenity. Mot. at 20-21. Plaintiff's arguments to the contrary are unavailing – effectively amounting to a concession that the Rule *might* apply, but only where the terms in controversy are sufficiently ambiguous. Given the excess of competing authorities on each of the statutory questions presented in the briefs, the statutes' ambiguity appears to be unquestionable. *See Doe v. Eating Recovery Center LLC,* 806 F.Supp.3d 1109, 1112 (N.D. Cal. 2025) ("[t]he state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability.").

43–66, 95–100). Having not alleged any visits to any sensitive websites, any inputs of confidential communications into VF's websites, or any breach of privacy policies or disclosures, Plaintiff has not alleged a reasonable expectation of privacy. *See Perez v. Romantix Online, Inc.*, No. 25-cv-02465, 2026 WL 1802589, at *2 (N.D. Cal. June 23, 2026); Mot. at 21-22. Similarly, the conduct that he alleges actually occurred as to his own website visits do not approach conduct traditionally deemed "highly offensive." *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025); Mot. at 22. Both deficiencies supply an independent basis for dismissal.

Finally, Plaintiff does not dispute that the Court should consider the CCPA when evaluating the reasonableness of a privacy expectation. He also does not dispute that the CCPA reflects a detailed framework addressing "cross-context behavioral advertising," to require opt-out, not opt-in, consent for the practices challenged here. Cal. Civ. Code § 1798.140(k). Plaintiff thus offers no basis for expanding tort law to prohibit conduct the Legislature chose to regulate, not ban.

### F. Plaintiff's UCL Claim Fails.

Plaintiff concedes that if his statutory claims fail, his UCL claim will necessarily fail for lack of a predicate. Opp. at 17 ("Plaintiff does not . . . depend on [the unlawful prong] if every predicate were to fail."). Plaintiff also appears to acknowledge that he has not sufficiently alleged lost money or property under the half-dozen authorities cited in VF's Motion. Mot. at 24 (including this Court's decision in *Ramos,* 2024 WL 4351868, at *6). And Plaintiff misunderstands the plain requirement of *Sonner v. Premier Nut. Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) that, to maintain a UCL claim, he must allege that he lacks an adequate remedy at law. *Id.*; *see also* Mot. at 25. Regardless, Plaintiff does not dispute that the missing allegation is fatal to his UCL claim. Opp. at 18. For at least those three reasons, there is no dispute that Plaintiff's UCL claim is subject to dismissal in its present form.

## IV. CONCLUSION

For the foregoing reasons, VF respectfully requests that the Court dismiss each of Plaintiff's causes of action with prejudice.

Dated: September 11, 2026

**ASHURST PERKINS COIE US LLP**

By: */s/ Hayden M. Schottlaender*
Nicola C. Menaldo (*pro hac vice*)
Hayden M. Schottlaender (*pro hac vice*)
Jameson Ullman, Bar No. 345480

Attorneys for Defendant VF Outdoor, LLC